UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BRADLEY B. HEISMAN and JULIA MATONTI,**<br><br>Plaintiffs,<br><br>vs.<br><br>**WYNDHAM VACATION RESORTS, INC.,**<br><br>Defendant. | Civil Action No. 20-11480-KM-JBC |

**MEMORANDUM OF LAW OF WYNDHAM VACATION RESORTS, INC. IN REPLY TO OPPOSITION TO MOTION TO DISMISS AND TO COMPEL PLAINTIFFS TO <u>PARTICIPATE IN ARBITRATION</u>**

**K&L GATES LLP**
Daniel M. Eliades, Esq.
One Newark Center, 10th Floor
Newark, NJ 07102
Tel: (973) 848-4018
Fax: (973) 848-4001
Email: daniel.eliades@klgates.com

*Counsel to Wyndham Vacation Resorts, Inc.*

307932882 v3

## TABLE OF CONTENTS

                                                                          **Page**

I.     Wyndham Has Not Waived Its Right to Enforce the Arbitration Agreement. .................. 1

II.    The Arbitration Agreement Is Valid and Enforceable. ...................................................... 2

III.   The American Arbitration Association Is Not an Integral Part of the Security Agreement. ........................................................................................................................ 5

IV.   Conclusion ........................................................................................................................ 6

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Delta Funding Corp. v. Harris,
   396 F. Supp. 2d 512, 516 (D.N.J. 2004) ...................................................................................2

Marcinczyk v. State of N.J. Police Training Comm'n,
   406 N.J. Super. 608 (App. Div. 2009) ......................................................................................3

Rudbart v. N. Jersey Dist. Water Supply Comm'n,
   127 N.J. 344 (1992) ..........................................................................................................2, 3, 4

Spaeth v. Srinivasan,
   403 N.J. Super. 508 (App. Div. 2008) ......................................................................................1

Stelluti v. Casapenn Enters., LLC,
   408 N.J. Super. 435 (App. Div. 2009) ......................................................................................3

Wyndham Vacation Resorts, Inc. ("Wyndham"), by and through its undersigned counsel, K&L Gates LLP, respectfully submits this reply brief in further support of its motion to dismiss and compel Plaintiffs to participate in arbitration.

## I.     Wyndham Has Not Waived Its Right to Enforce the Arbitration Agreement.

In their opposition, Plaintiffs correctly note that:

(i)     "Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring arbitration for dispute resolution." Rush v. Oppenheimer & Co., 779 F.2d 885 (2d Cir. 1985); and

(ii)     "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983).

Nevertheless, Plaintiffs argue that Wyndham has waived its right to arbitrate.

Under New Jersey law, "it must be shown that the party charged with the waiver knew of his or her legal rights and deliberately intended to relinquish them." Spaeth v. Srinivasan, 403 N.J. Super. 508, 514 (App. Div. 2008) (citing Shebar v. Sanyo Bus. Sys. Corp., 111 N.J. 276, 291, 544 A.2d 377 (1988)). "A party must know of the right and affirmatively reveal the intent to waive the right." Id. In fact, "[a]n effective waiver requires a party to. . . inten[d] to surrender those rights." Id. Further, "**[t]he party waiving a known right must do so clearly, unequivocally, and decisively**." Id. (emphasis added). "There is a presumption against waiver of an arbitration agreement, which can only be overcome by clear and convincing evidence that the party asserting it chose to seek relief in a different forum." Id.

1

Here, there are simply no facts to support Plaintiffs' waiver argument, and Plaintiffs have failed to meet their heavy burden. Plaintiffs essentially argue that because the American Arbitration Association (the "AAA") declined to administer the matter, Wyndham waived its rights to arbitration. (Pl. Br. at 4). However, Wyndham never made any representations that it would waive its rights to arbitration, nor did it seek relief in any other forum. Thus, since Wyndham did not waive its rights to arbitration, a valid and binding arbitration agreement exists between Plaintiffs and Wyndham, and Plaintiffs' claims are subject to arbitration.

Additionally, Plaintiff attempts to argue that the AAA Consumer Arbitration Rules are incorporated into the contract, and those rules provide that if the AAA does not administer the claim for any reason, either party is free to file in court. (Pl. Br. at 4). However, the Retail Installment Contract actually states that the "arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. §1 et seq.)". See Complaint, Exhibit A, § 34 (e). Pursuant to Section 5 of the Federal Arbitration Act (the "FAA") and the Court's inherent powers, the Court has the authority to allow the parties to select a new arbitrator or designate one of its choosing. This approach upholds the mandated federal policy to liberally construe arbitration clauses and to resolve doubts in favor of arbitration.

**II.     The Arbitration Agreement Is Valid and Enforceable.**

Plaintiffs contend that the arbitration provision cannot be enforced because the Retail Installment Contract is a contract of adhesion. (Pl. Br. at 5). Even assuming, *arguendo*, that the Retail Installment Contract is a contract of adhesion, there is no question that the arbitration provision is nevertheless valid and enforceable against the Plaintiffs. The words "contract of adhesion" do nothing more than define a type of contract, one that is "presented to the public on standardized, printed forms, on a take-it-or-leave-it basis without opportunity for purchasers to negotiate any of the terms." Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 351

2

(1992). Assuming, for the sake of argument, that the terms set forth in the Retail Installment Contract are adhesive, the observation that a contract is adhesive is not determinative in and of itself. As stated in Delta Funding Corp. v. Harris, "the mere fact that a contract is adhesive does not render it unenforceable—such a finding is the beginning, not the end, of the inquiry. . . . [A]n adhesive contract will only be unenforceable if it consists of grossly unfair contractual obligations." 396 F. Supp. 2d 512, 516 (D.N.J. 2004). Here, none of the contractual provisions at issue are "grossly unfair."

Rudbart sets forth the factors that a court should consider when determining if a contract of adhesion is enforceable regardless of its characterization as adhesive: "[1] The subject matter of the contract, [2] the parties' relative bargaining positions, [3] the degree of economic compulsion motivating the 'adhering' party, and [4] the public interests affected by the contract." 127 N.J. at 356. The court's application of the four factors in Rudbart to *uphold* the validity of a contract of adhesion is illustrative. Rudbart involved a suit by holders of commercial paper containing a notice provision that permitted the issuer to provide notice of redemption by publication. Many of the note holders, unaware of the published notice, failed to redeem their interests in a timely fashion resulting in substantial financial losses. Id. at 350. The holders complained that the notice provision should be stricken as an unconscionable requirement contained in a contract of adhesion. Id. Upon review, the court held that even though the notes fell within the literal definition of contracts of adhesion, the holders were nevertheless bound by the notice provisions. Id. at 360. In reaching its decision, the court found it significant that "no investor was under economic pressure to buy the notes." Id. at 356. The court ultimately concluded that there is no justification for invalidating the terms of a contract of adhesion in a fully open and competitive market where prospective investors could choose from a vast selection of alternative

3

investments. Id.; see also Stelluti v. Casapenn Enters., LLC, 408 N.J. Super. 435, 450 (App. Div. 2009) (holding that a gym membership agreement, which was a contract of adhesion, was not procedurally unconscionable in large part because the plaintiff had the choice not to sign the agreement).

Here, Plaintiffs assert that the arbitration provision is unenforceable because the Retail Installment Contract allegedly is a contract of adhesion, but they fail to address the four factors outlined in Rudbart, presumably because such an analysis shows that the Retail Installment Contract is valid and enforceable. The subject matter of the contract is a timeshare interest. The Plaintiffs undoubtedly had a choice as to whether to enter into the Retail Installment Contract to purchase a timeshare and were under no economic (or other) compulsion to do so. The Plaintiffs decided that they wanted to purchase a timeshare for vacationing purposes—if they were not happy with the terms of the Retail Installment Contract, they could have walked away. Instead, they decided to sign the Retail Installment Contract.

Moreover, under the Retail Installment Contract, the Plaintiffs had the right to cancel the Retail Installment Contract within ten (10) days and receive a full refund of their deposit (the "Rescission Period"). See Complaint, Exhibit A, § 44. The Plaintiffs could have consulted with an attorney at any time during the Rescission Period, and, if the Plaintiffs or their attorney did not approve the contract terms, cancel the Retail Installment Contract and receive a full refund of the deposit. Thus, the parties' relative bargaining positions do not merit invalidating the Retail Installment Contract. Also, there are no public interest factors implicated here. Rather, the contract here is more akin to the contract in Rudbart, where there was "no justification for invalidating the terms of a contract of adhesion in a fully open and competitive market where prospective investors

4

could choose from a vast selection of alternative investments." Rudbart, 127 N.J. at 356. As such, even if the Retail Installment Contract is a contract of adhesion, it is valid and enforceable.

Finally, the Plaintiffs provide no facts as to why they attempted arbitration pre-litigation if they believed that the arbitration agreement was unenforceable as a matter of law. In fact, in the Complaint, the Plaintiffs state that "Wyndham has failed and refused to arbitrate this matter before the American Arbitration Association. Thereby forcing costly litigation." See Complaint ¶ 53. Now, Plaintiffs claim that the arbitration provision is unenforceable—the Plaintiffs cannot advanced a certain position, and now, simply because their interests have changed, assume a contrary position.

### III. The AAA Is Not an Integral Part of the Security Agreement.

As discussed in the Motion to Dismiss and Compel Arbitration, the AAA's decision to decline to administer the claim does not undercut any argument asserted by Wyndham to compel arbitration. The Plaintiffs' arbitration agreement is clear that the purpose of the arbitration provision is to resolve "any dispute, claim, suit, demand or controversy arising out of or relating to this Agreement . . . exclusively and finally by individual arbitration." Complaint, Exhibit A, § H.34(a).

The paragraph in the contract that follows outlines the intended framework of arbitration, including that matters would be administered by the AAA. Id. § H.34(b). However, the AAA is merely the *mechanism* through which arbitration would proceed. The agreement to arbitrate is independent of, and not conditioned on, the AAA deciding the arbitration. Therefore, the Court has the authority to enforce the arbitration agreement by modifying the procedural mechanism through which arbitration will occur to resolve the dispute.

In a recent case filed in the Western District of Missouri, Brenda Atutonu King v. Wyndham Vacation Ownership, Inc. et al., case no. 18-03319 (the "King Case"), the AAA

5

declined to arbitrate and Wyndham Vacation Ownership, Inc. moved to have a substitute arbitrator appointed. The court reviewed the language contained in the contract, which is nearly identical to the Retail Installment Contract, and held the following:

> [T]he Court finds nothing in the contract indicates that the AAA was integral to the arbitration agreement. The parties' express agreement to arbitrate, as contained in the first section of the arbitration agreement, makes no mention of the AAA. It is only in the later sections, which detail the mechanisms of arbitration, that the AAA is identified as the chosen arbitral forum. Yet the mere identification of a specific arbitrator does not make that arbitrator integral. Instead, what is needed is an express statement that arbitration may only proceed before that arbitrator.
>
> *****
>
> Because there is no express statement otherwise, the Court finds the designation of the AAA as the arbitral forum was not integral to the arbitration agreement. Consequently, and in consideration of the presumption in favor of arbitration under the FAA and the text of 9 U.S.C. § 5, the Court will appoint a substitute arbitrator to arbitrate Plaintiffs' claims.

A copy of the June 23, 2020, Order on Plaintiffs' Motion to Set Aside issued in the King Case is attached to the certification of Daniel M. Eliades as **Exhibit A.**

Based on the above, Plaintiffs' contention that the AAA is integral to the Retail Installment Contract should be disregarded by the Court and a substitute arbitrator should be appointed.

### IV. Conclusion

Wyndham respectfully requests that the Court grant its Motion to Dismiss and to Compel Plaintiffs to Participate in Arbitration.

September 28, 2020

**K&L Gates LLP**
One Newark Center, 10th Floor
Newark, NJ 07102
Telephone: (973) 848-4018
Facsimile: (973) 848-4001
*Daniel.Eliades@klgates.com*

By: */s/ Daniel M. Eliades*
　　　Daniel M. Eliades

*Attorneys for Wyndham Vacation Resorts, Inc.*

6